**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-21675-BLOOM/Elfenbein**

AUDREY LOUBATON, individually
and all others similarly situated,

Plaintiffs,

v.

WALMART INC., d/b/a
WALMART, WM SUPERCENTERS,
SAM'S CLUB, WALMART DISCOUNT
STORES, and WALMART NEIGHBORHOOD
MARKETS,

Defendant.
_________________________________/

**ORDER ON MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

**THIS CAUSE** is before the Court upon Defendant Walmart Inc.'s ("Defendant") Corrected Motion to Dismiss Plaintiff's Amended Class Action Complaint, ECF No. [32] ("Motion"). Plaintiff Audrey Loubaton ("Plaintiff") filed a Response in Opposition, ECF No. [34], to which Defendant filed a Reply, ECF No. [35]. The Court has considered the Motion, the supporting and opposing submissions, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I. BACKGROUND

Plaintiff's Amended Class Action Complaint alleges that Defendant has engaged in a practice of systematically misrepresenting, charging, and collecting purported Florida sales taxes for purchases of tax-exempt baby and toddler products in their Florida stores. ECF No. [28] ¶ 1. Specifically, Defendant's retail stores in Florida charge and collect a 7% surcharge payment, presented as Florida sales tax, on purchases of certain baby and toddler clothes, shoes, or other

apparel ("Baby and Toddler Products"), which are sales tax exempt under Florida Statute § 212.08(7)(ppp). *Id.* ¶ 2. When a customer purchasing a Baby and Toddler Product is overcharged under the pretense of lawful Florida sales taxes, the customer receives a receipt reflecting that a 7% charge, presented as a Florida sales tax, has been added to the customer's purchase subtotal. *Id.* ¶ 3.

In 2022, the Florida State Legislature implemented a sales and use tax exemption for diapers and baby and toddler clothing, apparel, and shoes. *Id.* ¶ 17. Subsequently, the Florida State Legislature and Governor Ron DeSantis extended the exemption permanently and expanded it to include a broader range of Baby and Toddler Products. *Id.* The initial exemption was in effect from July 1, 2022 through June 30, 2023, and by enacting House Bill 7063 during the 2023 Florida Legislative Session, the Baby and Toddler Product tax exemption was made permanent, effective as of July 1, 2023. *Id.* ¶ 18. The stated purpose of the expanded Baby and Toddler Product tax exemption was "aimed at providing families with $2.7 billion in tax relief" in just the 2023–2024 fiscal year alone. *Id.* ¶ 20.

Florida provided Defendant with notice of the sales tax exemption by publication entitled "Sales Tax Exemption Period on Children's Diapers and Baby and Toddler Clothing, Apparel, and Shoes July 1, 2022," published by the Florida Department of Revenue on May 6, 2022. *Id.* ¶ 23. The Florida Department of Revenue maintained a public website devoted exclusively to providing information on the Baby and Toddler Products sales tax exemptions. *Id.* On July 9, 2023, Florida again provided Defendant notice of the sales tax exemption by a publication from the Florida Department of Revenue titled "Sales and Use Tax Exemption for Baby and Toddler Products Effective July 1, 2023." *Id.* ¶ 24.

At all relevant times, Defendant sold a variety of Baby and Toddler Products including, but not limited to, baby and toddler clothing, apparel, and shoes. *Id.* ¶ 25. The products are Baby and Toddler Products subject to sales tax exemption. *Id.* ¶ 26.

Notwithstanding this, Defendant's Florida retail stores routinely and systematically charge and collect sales tax on Baby and Toddler Products from Florida purchasers. *Id.* ¶ 27. Indeed, Defendant maintains and operates a point-of-sale system that calculates charges in sales transactions, including sales taxes for products, and that system is configured to automatically calculate and apply sales tax for products including tax exempt Baby and Toddler Products. *Id.* ¶¶ 31, 32.

Sales tax is traditionally collected from the purchaser by the business at the point of sale in the form of an additional charge added to the purchase price. *Id.* ¶ 34. Under Florida law, for each purchase, the sales tax is required to be itemized separately on the sales receipt, notifying consumers of the tax they paid apart from the price of the product itself. *Id.* ¶ 35. Defendant presented the charges at issue here as a legally mandated tax, and Plaintiff and class members relied on Defendant's representations of the amount owed, causing them to pay amounts not lawfully owed. *Id.* ¶ 36. Defendant failed to provide Florida consumers with any notice or indication that the payment of sales and use tax was not required for Baby and Toddler Products. *Id.* ¶ 37. Consumers have no obligation to learn the tax code prior to engaging in retail transactions, and Florida's statutory and regulatory scheme relies on businesses properly collecting sales tax on behalf of the State of Florida. *Id.* ¶ 38. The improper sales tax collection at issue here was not reasonably avoidable by Florida consumers, given the lack of notice until checkout and lack of consumer knowledge of the tax code. *Id.* ¶ 39. Defendant has failed to

return the sales tax overcharge to their customers, even though it has the ability to do so. *Id.* ¶¶ 48–51.

Plaintiff purchased boys' shoes in size 8 from Defendant for a total of $11.75 at the Walmart Superstore in Hollywood, Florida. *Id.* ¶ 14. The printed receipt for the transaction contains a line item for "Tax" that places a 7% surcharge onto the purchase. *Id.* ¶¶ 14, 15. At the time of Plaintiff's purchase, Florida's Baby and Toddler product tax exemption had been in effect for nearly three years. *Id.* ¶ 16.

In March 2026, Plaintiff filed this lawsuit. ECF No. [1]. In June 2026, Plaintiff filed the Amended Complaint, asserting nine claims: Fraudulent Misrepresentation (Count I); Unjust Enrichment (Count II); Breach of Contract (Count III); Unconscionability (Count IV); Conversion (Count V); Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI); Negligent Misrepresentation (Count VII); Negligence (Count VIII); and Injunctive Relief (Count IX). ECF No. [28] ¶ 64.

In July 2026, Defendant filed the Motion, arguing the Amended Complaint should be dismissed because Plaintiff lacks standing, the Court lacks subject matter jurisdiction, and all counts fail to state a claim. ECF No. [32]. Plaintiff responds that she has standing, administrative exhaustion does not apply to strip the Court of subject matter jurisdiction, and each of her causes of action states a claim. ECF No. [34]. Defendant replies that Plaintiff lacks standing because she cannot allege a redressable injury, the Court lacks subject matter jurisdiction based on lack of administrative exhaustion, and each claim should otherwise be dismissed under Federal Rule of Civil Procedure 12(b)(6). ECF No. [35].

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F. 3d 964, 975 (11th Cir. 2005). It should do so "at the earliest possible stage in the proceedings." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F. 3d 405, 410 (11th Cir. 1999). Once a federal court determines that it is without subject-matter jurisdiction, "the court is powerless to continue." *Bochese*, 405 F. 3d at 974-75; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

### B. Rule 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

## III. DISCUSSION

### A. Lack of Subject Matter Jurisdiction Based on Failure to Exhaust Administrative Remedies

Defendant argues that Florida law requires consumer claims for tax refunds to proceed through Florida's tax administration procedures. ECF No. [32] at 7. Such procedures require every plaintiff and putative class member to exhaust their administrative remedies by seeking a tax refund from the state or retailer prior to filing suit. *Id.* Since Plaintiff failed to do so, the Court should dismiss the Amended Complaint. *Id.*

Plaintiff responds that Defendant's asserted administrative exhaustion requirements do not apply to Plaintiff's claims for three reasons: (1) she does not seek a tax refund, (2) no administrative remedy is available to consumers, and (3) the consumer has no relevant claim to file in the first place. ECF No. [34] at 6.

Defendant replies that the Court lacks subject matter jurisdiction because Plaintiff is subject to § 215.26's exhaustion requirements and failed to exhaust its administrative remedies. ECF No. [35] at 4–8.

Florida Statute § 215.26 provides, in relevant part:

> (1) The Chief Financial Officer may refund to the person who paid same, or his or her heirs, personal representatives, or assigns, any moneys paid into the State Treasury which constitute:
> (a) An overpayment of any tax, license, or account due;
> (b) A payment where no tax, license, or account is due; and
> (c) Any payment made into the State Treasury in error;
> and if any such payment has been credited to an appropriation, such appropriation shall at the time of making any such refund, be charged therewith. There are appropriated from the proper respective funds from time to time such sums as may be necessary for such refunds.
>
> (2) Application for refunds as provided by this section must be filed with the Chief Financial Officer, except as otherwise provided in this subsection, within 3 years after the right to the refund has accrued or else the right is barred.
> . . .

> (4) This section is the exclusive procedure and remedy for refund claims between individual funds and accounts in the State Treasury.

Fla. Stat. § 215.26.

Florida courts have explained that § 215.26 represents the "statutory procedure for obtaining a refund of a tax payment where no tax was due." *State Dep't of Highway Safety & Motor Vehicles v. Rendon*, 957 So. 2d 647, 653 (Fla. 3d DCA 2007). Because § 215.26 "provides the mechanism" for pursuing and receiving a tax refund, "an individual is required to request a refund" through the administrative process defined by § 215.26 "before proceeding to [Florida] circuit court." *Sarnoff v. Fla. Dep't of Highway Safety & Motor Vehicles*, 825 So. 2d 351, 355 (Fla. 2002). That is, the taxpayer may only bring suit "if the taxpayer's administrative request for a refund is denied." *Rendon*, 957 So. 2d at 653–54. "Since the statute requires that an aggrieved party pursue his or her administrative remedies prior to filing a lawsuit, the trial court [is] without subject matter jurisdiction" where a plaintiff fails to exhaust the prescribed administrative remedies. *BJ's Wholesale Club, Inc. v. Bugliaro*, 273 So. 3d 1119, 1121 (Fla. 3d DCA 2019).

Two important matters merit specific elaboration. First, the administrative exhaustion requirement applies to claims for refunds from the state *and* from the dealer that initially collected the allegedly wrongful tax, *id.*, as sales taxes are considered "state funds from the moment of collection." Fla. Stat. § 213.756(1). Second, the precise "nature of the claim" is irrelevant; so long as a plaintiff's remedy is in the nature of a "tax refund," the plaintiff must "exhaust the administrative procedures in section 215.26 before going to the courts." *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1050 (11th Cir. 2020) (citing *BJ's*, 273 So. 3d at 1121).

The combination of the Eleventh Circuit's decision in *Fox* and the Florida Court of Appeals' decision in *BJ's*, both cited above, is dispositive here. In large part, Plaintiff seeks what is, in sum and substance, "moneys paid into the State Treasury which constitute . . . [a] payment where no tax, license, or account is due." Fla. Stat. § 215.26(1). The naming of the claims is irrelevant; indeed, in *BJ's*, the plaintiff asserted a claim under FDUTPA, but the court nonetheless held that exhaustion of § 215.26's administrative remedies was required. *BJ's*, 273 So. 3d at 1121. Similarly, here, notwithstanding the nature of Plaintiff's claims, the claims sound in the language of a tax refund.

Count I seeks "damages," Count II seeks "restitution," Count III seeks "actual damages," Count IV seeks "actual damages," Count V seeks "damages and costs," Count VI seeks "actual damages," Count VII seeks "actual damages," and Count VIII seeks "actual, consequential, and nominal damages." ECF No. [28]. In each case, the amount of Plaintiff's monetary damages is necessarily defined by reference to amounts wrongfully paid as tax where no tax was due. That amount is a tax refund.[1] As such, each of these claims was subject to § 215.26's administrative exhaustion requirements, and even though these counts may contain injunctive relief components, Florida law counsels that the entire claim is precluded where administrative remedies were not sought. *See BJ's*, 273 So. 3d at 1121 (finding that, because a count "includes a request for a refund, [the plaintiff] and any putative class members were required to exhaust their administrative remedies[.]").

[1] Indeed, Plaintiff states that she seeks from this Court, among other things, an order "awarding repayment, with interest, of the wrongfully charged sums purported to be sales tax on Baby and Toddler Products collected from members of the proposed Class." ECF No. [28] ¶ 5. The Supreme Court counsels that, in assessing whether a claim is subject to administrative exhaustion requirements, "[w]hat matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 169 (2017). Similarly, Florida law explains that "a pleading is not governed by its label, but rather, by its substance." *Balboa Ins. Co. v. W. G. Mills, Inc.*, 403 So. 2d 1149, 1151 (Fla. 2d DCA 1981) (citation omitted).

That leaves Count IX, which seeks "Injunctive Relief." ECF No. [28] at 41. But Florida law only permits "a cause of action for injunctive relief provided it is ancillary and dependent upon another cause of action seeking relief." *Owners of Trailers at Li'l Abner Trailer Park v. CREI Holdings, LLC*, No. 3D25-0762, 2026 WL 1014077, at *4 (Fla. 3d DCA Apr. 15, 2026).[2] Here, the injunctive relief claim would be the only cause of action, which, standing alone, is impermissible under Florida law.

Section 215.26 provides the "exclusive procedure and remedy" for Plaintiff to recover her alleged remedies, precluding the Court's subject matter jurisdiction where the prescribed procedures were not followed. Plaintiff does not allege that she followed the required procedures, leaving this Court without subject matter jurisdiction over Counts I through VIII and, by extension, unable to hear a standalone Count IX. As such, the Amended Complaint is subject to dismissal without prejudice.

Plaintiff's remaining arguments are unavailing. Plaintiff contends that no administrative remedy is available to consumers because Florida Administrative Code Rule 12A-1.014(4) provides that "a taxpayer . . . who has paid tax to a dealer when no tax is due, must secure a refund of the tax from the dealer and not from the Department of Revenue." ECF No. [34] at 8.[3] Plaintiff points to four cases in support of her position: *Oracle America, Inc. v. Florida*

---

[2] Contrary to Plaintiff's argument, *Fox* does not compel that claims for injunctive relief related to the tax collection dispute be permitted to proceed. It is true that the Eleventh Circuit in *Fox* reinstated "counts four and five to the extent they seek declaratory and injunctive relief as part of the Florida Deceptive and Unfair Trade Practices Act claims in counts one and two." *Fox*, 977 F.3d at 1051. But counts one and two dealt with the defendant's automatic gratuity or service charge. *Id.* at 1044. The counts did not deal with the wrongful tax surcharges at all—that complaint was covered by count three. *Id*. As such, counts four and five, seeking declaratory and injunctive relief were reinstated to the extent they incorporated standalone FDUTPA claims entirely unrelated to tax overcharges.

Here, by contrast, any request for injunctive relief is connected with the tax refunds sought, making this case more analogous to *BJ's*.

[3] Plaintiff's specific argument is that § 215.26 is principally about tax remittances by the dealer, not the underlying taxpayer, and is therefore geared toward refunds to the dealer. ECF No. [34] at 11.

*Department of Revenue*, *Schojan v. Papa John's International, Inc.*, *Minniti v. Pizza Hut of America, Inc.*, and *Fox v. Loews Corporation*. *Id.* at 8–10. But none of these cases compels a different result.

*Oracle* acknowledged that, "unlike the Code which says a dealer is the proper party to seek a refund from the Department, Florida law only allows the *taxpayer* to receive a refund or to contest a refund denial" by way of § 215.26. 397 So. 3d 819, 822 (Fla. 1st DCA 2024) (citations omitted and emphasis in original). That is, § 215.26 is a pathway for *taxpayers* to receive refunds, not for *dealers* to receive refunds after refunding taxpayers. Plaintiff's reading renders § 215.26 entirely superfluous. Based on *Oracle*, Plaintiff's cited case, § 215.26 is not a pathway for dealers, and based on Plaintiff's interpretation, it is not a pathway for taxpayers either—Florida Administrative Code Rule 12A-1.014(4) is the pathway for taxpayers. That means § 215.26 applies to no one, an absurd result that cannot be correct. Indeed, *Oracle* even acknowledged that "we adjudicate disputes based on the language of Florida law, even where it may be in conflict with a promulgated rule." 397 So. 3d at 822 (citation omitted); *see also Dep't of Bus. Regul. v. Salvation Ltd.*, 452 So. 2d 65, 66 (Fla. 1st DCA 1984) ("It is axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute."). Thus, the plain language of § 215.26 must control over Florida Administrative Code Rule 12A-1.014(4), both because laws control over rules and because Plaintiff's proposed reading would render a statutory provision entirely superfluous.

Moreover, with respect to *Schojan*—a Middle District of Florida case—*Minniti*—a Florida Circuit Court case—and *Loews Corporation*—a Southern District of Florida case—each was decided before *Fox* and *BJ's*, which respectively represent higher courts offering decisive interpretations of the key legal provisions. *See Schojan v. Papa John's Int'l, Inc.*, No. 8:14-CV-

1218-T-33MAP, 2014 WL 4674340 (M.D. Fla. Sept. 18, 2014); *Minniti v. Pizza Hut of America, Inc.*, No. 14-023335 CACE (07), 2015 WL 5037164 (Fla. Cir. Ct. Aug. 26, 2015); *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1252 (S.D. Fla. 2018). *Fox* unequivocally stated that § 215.26 "required" the taxpayer "to exhaust his administrative remedies before filing a lawsuit for a tax refund." 977 F.3d at 1050. *BJ's* similarly informed a taxpayer that "the statute [§ 215.26] requires that an aggrieved party pursue his or her administrative remedies prior to filing a lawsuit." 273 So. 3d at 1121. Indeed, the operative complaint in *Fox* raised Florida Administrative Code Rule 12A-1.014(4) as the mechanism for recovering amounts wrongfully paid as taxes, so the Eleventh Circuit was aware of this regulatory provision when it nonetheless decided that § 215.26 provided the exclusive pathway for receiving amounts wrongfully paid. *See Fox v. Ritz-Carlton Hotel Company, LLC*, 17-cv-24284-AHS, ECF No. [17] (February 15, 2018).

Based on the above considerations, the Court dismisses the Amended Complaint without prejudice.[4] Because the Court finds that it lacks subject matter jurisdiction, it does not consider Defendant's alternative argument that Plaintiff lacks standing or that the Amended Complaint fails to adequately state claims for relief.

---

[4] Two other cases supporting the Court's conclusion here merit mentioning. In *Sarnoff*, the Florida Supreme Court grappled with the limits of § 215.26. It concluded that "Section 215.26 provides the mechanism for receiving a refund from the State." 825 So. 2d at 355. Further, the court explained that "an *individual* is required to request a refund under this statute before proceeding to circuit court." *Id.* (emphasis added). This case specifically interpreted § 215.26 as providing the refund pathway for individuals.

Similarly, in *Rendon*, the Court of Appeals explained that "a taxpayer can obtain a refund of a fee paid where no fee was owed." 957 So. 2d at 653. That case similarly contemplated § 215.26 providing the required administrative pathway for individuals seeking to recover taxes paid where none were owed and did not view § 215.26 as providing a pathway for dealers, as suggested by Plaintiff.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that

1. Defendant's Motion, **ECF No. [32],** is **GRANTED**.
2. Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.
3. The Clerk of Court is directed to **CLOSE** this case.
4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 25, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record